# 12 CIV 1462

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **SARAH ARCHBOLD,** | * | |
| **and** | * | |
| **DONALD W. MARVIN,** | * | |
| *Plaintiffs,* | * | **Case No.** |
| **v.** | * | |
| **NYPC & ATM SERVICES, INC.** | * | **JURY TRIAL DEMANDED** |
| **and DOES 1-10, inclusive,** | | |
| | * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Sarah Archbold and Donald W. Marvin, ("Plaintiffs"), hereby allege as follows:

### INTRODUCTION

1.     Plaintiffs bring this action against Defendants alleging violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.*, and its implementing regulations 12 C.F.R. § 205, *et seq.*, (hereinafter referred to collectively as the "EFTA").

2.     The EFTA establishes the basic rights, liabilities, and responsibilities of consumers who use electronic fund transfer services and

of financial institutions that offer these services. The primary objective of the EFTA and its implementing regulation is the protection of consumers engaging in electronic fund transfers. 12. C.F.R. § 205.1(b). The EFTA requires that specific disclosures be given by operators of an automated teller machine ("ATM") to consumer users of an ATM, prior to the imposition of a fee for using the ATM. 15 U.S.C. § 1693b.

3.     The Congressional findings and declaration of purpose regarding the EFTA are as follows:

(a)   Rights and liabilities undefined

The Congress finds that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. However, due to the unique characteristics of such systems, the application of existing consumer protection legislation is unclear, leaving the rights and liabilities of consumers, financial institutions, and intermediaries in electronic fund transfers undefined.

(b)   Purposes

It is the purpose of this subchapter to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights.

15 U.S.C. § 1693.

4.     There are over 350,000 ATMs located in the United States, accounting for 13 billion transactions annually. Over 200 million

consumers over the age of 18 have an ATM card. The average surcharge imposed for use of an ATM is $2.00 per transaction. It is estimated that 3% to 5% of an establishments' daily foot traffic will use an ATM machine located in the establishment. Thus, charging consumers for access to cash from their checking and savings accounts is a $26 billion industry, on an annual basis.

5.    Among other things, the EFTA imposes certain disclosure requirements upon operators of automated teller machines ("ATMs").

6.    15 U.S.C. § 1693b(d)(3)(A) requires any ATM operator who imposes fees on consumers in connection with electronic fund transfers to provide notice of the fact that the fee is being imposed and the amount of the fee.[1]

7.    15 U.S.C. § 1693b(d)(3)(B) identifies the location where the required notice must be posted as follows:

　　　(B)   Notice requirements

　　　　　(i)    On the machine

---

[1]    "Electronic fund transfer" is defined as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone . . . ." 15 U.S.C. § 1693a(6).

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

(ii)   On the screen

The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction . . . .

8.    The relevant implementing regulation, 12 C.F.R. § 205.16(c) reinforces EFTA's statutory posting requirement, mandating that the mandatory fee notice: 1) be posted in a "prominent and conspicuous location" on or at the ATM machine; and, 2) "on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying the fee." 12 C.F.R. § 205.16(c)(1) and (2).

9.    The implementing regulation also requires that the content of the notice be "clear and readily understandable."

10.    15 U.S.C. § 1693b(d)(3)(C), and its implementing regulation, 12 C.F.R. 205.16(e), prohibit ATM operators from imposing a fee on a consumer unless EFTA's notice and posting requirements are followed by the ATM operator.

11.    Specifically, 15 U.S.C. § 1693b(d)(3)(C) states, in relevant part:

(C)   Prohibition on fees not properly disclosed and explicitly assumed by the consumer.

No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless—

(i)    The consumer receives such notice in accordance with subparagraph (B) . . . .

12.    In connection with 2006 amendments to the EFTA, the Board of Governors of the Federal Reserve published its Final Rule and official staff interpretation which, *inter alia*, explained the EFTA's disclosure requirements as follows:

The final rule clarifies the two-part disclosure scheme established in Section 904(d)(3)(B) of the EFTA. The first disclosure, on ATM signage posted on or at the ATM, allows consumers to identify quickly ATMs that generally charge a fee for use. This disclosure is not intended to provide a complete disclosure of the fees associated with the particular type of transaction the consumer seeks to conduct. Until a consumer uses his or her card at an ATM, the ATM operator does not know whether a surcharge will be imposed for that particular consumer. Rather it is the second, more specific disclosure, made either on the ATM screen or on an ATM receipt, that informs the consumer before he or she is committed to the transaction whether, in fact, a fee will be imposed for the transaction and the amount of the fee . . . .

71 F.R. 1638, 1656.

13.    On November 27, 2009, the Federal Deposit Insurance

Corporation ("FDIC") issued Financial Institution Letter 66-2009 reiterating the fact that the EFTA requires ATM operators to post ATM fee notices both (a) in a prominent and conspicuous location on or at the automated teller machine, and (b) on the screen or on paper before the consumer is committed to paying a fee. The letter also noted that the FDIC had first notified FDIC-supervised banks of these requirements in a Financial Institution Letter dated March 23, 2001 (FIL-25-2001).

14.    The EFTA imposes strict liability upon ATM operators which fail to comply with its disclosure requirements. *See, e.g., Flores v. Diamond Bank,* 2008 WL 4861511, *1 (N.D. Ill. Nov. 7, 2008)(Hibbler, J.)("Among the protections afforded to consumers is the right to receive notice from ATM operator of the existence and amount of any fee that operator might impose on consumers for conducting transactions at the ATM. 15 U.S.C. § 1693b(d)(3). This requires the ATM operator to place notice both on the machine itself and upon the ATM screen. 15 U.S.C. § 1693b(d)(3)(B)"). A plaintiff seeking statutory damages under the EFTA need not prove that he or she has sustained any actual financial loss, or that he or she relied upon the lack of mandatory disclosure as an inducement to enter into the transaction. *Burns v. First American Bank,* 2006 WL 3754820, *6 (N.D. Ill. Dec. 19 2006)("Section 1693b(d)(3) prohibits an ATM operator from

charging a fee unless it provides notice of its fee on the machine and on the screen, period, no mention of a necessary scienter.")

15. Enforcement of EFTA's mandatory notice requirements is conducted primarily by way of private litigation brought by consumers, such as the Plaintiffs, who are experienced and knowledgeable of the notice requirements of EFTA. As explained in House Report 95-1315, the EFTA's civil liability provision "is the backbone of enforcement of this legislation." The threat of lawsuits, such as this one, persuades responsible financial institutions and ATM operators to "comply with the spirit and letter of the law." Without the civil liability provision, "a financial institution could violate the [Statute] with respect to thousands of consumers without their knowledge, if its financial impact was small enough or hard to discover." For this reason, the civil liability provision is "an essential part of enforcement of the bill because, all too often, although many consumers have been harmed, the actual damages in contrast to the legal costs to individuals are not enough to encourage a consumer to sue." Individual enforcement actions are often the catalyst to ensuring compliance with the statute and result in protecting future consumers from injury.

## JURISDICTION AND VENUE

16. This Court has federal question jurisdiction pursuant to 28

U.S.C. §1331 and 15 U.S.C. §1693, *et seq.*

17.    Plaintiffs' claims asserted herein arose in this judicial district and Defendants do substantial business in this judicial district.

18.    Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

19.    Plaintiffs are natural persons who reside in the Commonwealth of Pennsylvania.

20.    Defendant NYPC & ATM Services, Inc. owns and operates the automated teller machine located at the International Smoke Shop and Grocery, 809 8th Avenue, New York, New York.

21.    Defendant NYPC & ATM Services, Inc. is an automated teller machine operator, as that term is defined by 12 C.F.R. § 205.16(a), which states: "Automated teller machine operator means any person that operates an automated teller machine at which a consumer initiates an electronic fund transfer or a balance inquiry and that does not hold the account to or from which the transfer is made, or about which the inquiry is made."

22.    The true names and capacities of defendants sued herein as Does 1 through 10, inclusive, are presently not known to Plaintiffs, who

therefore sue these defendants by such fictitious names. Plaintiffs will seek to amend this Complaint pursuant to Federal Rule of Civil Procedure 15 and include the Doe defendants' true names and capacities when they are ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by Plaintiffs as a result of Defendants' wanton and illegal conduct.

23.    NYPC & ATM Services, Inc., and Does 1 through 10, inclusive, are collectively referred to as "Defendants."

### FACTS RELATED TO PLAINTIFFS' TRANSACTIONS

24.    On September 25, 2011, Plaintiff Sarah Archbold made an electronic fund transfer at an ATM operated by Defendants located at International Smoke Shop and Grocery, 809 8th Avenue, New York, New York. *See* **Exhibit 1**. Plaintiff Sarah Archbold did not hold an account with Defendants.

25.    At the time of the above-described electronic transaction, Defendants were acting as an "automated teller machine operator" that operated the automated teller machine at which Plaintiff Sarah Archbold initiated an electronic fund transfer.

26.    Defendants charged Plaintiff Sarah Archbold a "Terminal Fee" of $1.50 in connection with the above-described transactions. *See* **Exhibit**

**1**.

27.    However, at the time of the above-described transaction, there was no notice posted "on or at" the ATM operated by the Defendants apprising consumers that a fee may be charged for use of the ATM. *See* **Exhibit 2**, **Exhibit 3**.

28.    Because Defendants did not post the required notice, they were not permitted to charge any usage fee to Plaintiff Sarah Archbold.

29.    On September 25, 2011, Plaintiff Donald W. Marvin made an electronic fund transfer at an ATM operated by Defendants located at International Smoke Shop and Grocery, 809 8th Avenue, New York, New York. *See* **Exhibit 4**. Plaintiff Donald Marvin did not hold an account with Defendants.

30.    At the time of the above-described electronic transaction, Defendants were acting as an "automated teller machine operator" that operated the automated teller machine at which Plaintiff Donald Marvin initiated an electronic fund transfer.

31.    Defendants charged Plaintiff Donald Marvin a "Terminal Fee" of $1.50 in connection with the above-described transactions. *See* **Exhibit 4**.

32.    However, at the time of the above-described transaction, there

was no notice posted "on or at" the ATM operated by the Defendants apprising consumers that a fee may be charged for use of the ATM. *See* **Exhibit 5**, **Exhibit 6**.

33.    Because Defendants did not post the required notice, they were not permitted to charge any usage fee to Plaintiff Donald Marvin

## COUNT I

34.    15 U.S.C. § 1693b(d)(3)(A) provides that as a prerequisite to imposition of a usage fee upon a consumer for host transfer services, an automated teller machine operator must provide notice to the consumer consistent with subparagraph (B) of that statutory section.

35.    Subparagraph (B) of 15 U.S.C. § 1693(d)(3) provides:

(B) Notice requirements

(iii)    On the machine

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

36.    Subparagraph (C) of 15 U.S.C. § 1693b(d)(3) states:

(C) Prohibition on fees not properly disclosed and explicitly assumed by the consumer.

No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer

initiated by a consumer for which a notice is required under subparagraph (A), unless—

    (i)    The consumer receives such notice in accordance with subparagraph (B) . . . .

37.    EFTA's statutory notice requirements are reinforced by the implementing regulations set forth at 12 C.F.R. § 205.16.

38.    Defendants violated the notice requirements of EFTA in connection with providing host transfer services to Plaintiffs.

39.    Defendants were prohibited from imposing any usage fee or similar fee because they failed to comply with EFTA's notice requirements.

40.    15 U.S.C. § 1693m provides that a defendant shall be liable to plaintiffs for violations of 15 U.S.C. § 1693b for any actual damage sustained by the consumer as the result of the failure to comply with EFTA; statutory damages in an amount of not less than $100 nor greater than $1,000; costs of the action and a reasonable attorney's fee as determined by the court.

41.    Plaintiffs sustained actual damages as the result of the Defendants' failure to comply with EFTA including damages for inconvenience, legal fees, loss of the use of funds and pre-judgment interest.

42.    By way of this action, Plaintiffs seek actual damages, statutory

damages, costs of suit and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs each pray for:

1.   An award of actual damages of $4,000.00;

2.   An award of statutory damages of $1,000.00 ;

3.   Payment of costs of suit; and,

4.   Payment of reasonable attorneys' fees.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

Dated: February 23, 2012,        Respectfully Submitted,

E. David Hoskins, Bar No. EH2235
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
Quadrangle Building at Cross Keys
2 Hamill Road, Ste. 362
Baltimore, Maryland 21210
(410) 662-6500 (Tel.)
(410) 662-7800 (Fax)
*dhoskins@hoskinslaw.com*

Albany Office:

90 State Street, Ste. 700
Albany, New York 12207
(518) 935-2672

# Exhibit

# 1

# Exhibit

# 2



# Exhibit

# 3



# Exhibit

# 4

WELCOME TO INTERNATINAL
SMOKE SHOP AND GROCERY
809 8AVE NEW YORK
NY 10019 TEL#(646)557-0501
DATE:09/25/2011          TIME:15:30:35
TERMINAL                 N172345

WITHDRAWAL FROM CHECKING

CARD NUMBER          ************1490
BUSINESS DATE            09/25/2011

# Exhibit

# 5





# Exhibit

# 6

